When I began to think about how to approach this argument, it dawned on me it was like the horse is being led out of the corral. And that happened at the motion to suppress when first counsel, first defense counsel, failed to challenge the issue of consent at the entry into his home, Mr. Davenport's home. And it's clear from the facts that there wasn't a valid warrant because the warrant was for a different address, and the agents never attempted to get a different warrant, a subsequent warrant. Do they need a warrant if he consented? No, but the facts surrounding the consent were certainly contested, and the district court judge indicated that he had a hard time believing anybody, whether it be the agents or the defendant. So it certainly was a ripe issue. But he did rule on it, and I — isn't that sort of a done thing? I mean, it — even if you did get a different counsel and — Well, his ruling on it was not a direct result from defense counsel challenging it and putting forth — posturing the right questions for the right law. The judge ruled on it and said the consent was valid. That mischief in some cases would only be able to be brought forth in a habeas motion, except Hill v. Lockhart says that when we get to the issue of withdrawing a plea, which was somewhat founded on ineffective assistance of counsel on the consent issue, that ineffective can — ineffective assistance can form the basis for the motion to withdraw the plea, which we get to that after first counsel is out of the picture and second counsel comes in and says to the judge, well, these horses should not be out of the corral. They were let out of the corral by first counsel, and, Your Honor, you need to bring them back in. And the district judge didn't see it that way based on his erroneous approach to implementing the wrong standard, because his whole focus was that Winston couldn't withdraw his plea because — for any reason, because his plea was valid. He knew the elements of the law when he pled guilty, and he knew the elements of a valid consent and didn't — he didn't raise consent at the motion to suppress, which we know that was because counsel didn't do it. So when second counsel comes on, on board, he tries to rein in these runaway horses, but he's not allowed to do it, and that was an abuse of discretion because, based on this Court's precedent in Davis, for example, he presented a fair and just reason under Hill v. Lockhart. But Davis involved more than just buyer's remorse, which — this is a species, in this case, of buyer's remorse. It involved affirmative misleading on the part of the lawyer. Well, Your Honor, first counsel did — if we adopt the argument of second counsel, first counsel did mislead Winston in saying that when the motion to suppress was denied, he had to plead guilty. There wasn't another — wasn't anything to go to trial on, except second counsel points out, yes, there was. And it was the mens rea, the knowingly possessing child pornography. So I think it was an affirmative misleading. And why — why wouldn't that be an issue to be raised in habeas, where you can make a record of why the lawyers said what they said or did what they did? Do you have any case that says it's an abuse of discretion for the Court to deny withdrawal of a guilty plea based on a new lawyer coming up with a new theory? Only on — founded on ineffective assistance to counsel, which would be Hill v. Lockhart. I mean, second counsel's rethinking the legal tenets of why the plea should be withdrawn and mentioned both that first counsel never challenged the consent, and furthermore, he was — he erred as to the elements, and therefore, if — if one of the elements of the statute of possessing and receiving child pornography knowingly requires the mental state that you know what you're doing is against the law, then, yes, the plea should be withdrawn based on — even though it kind of slides into a habeas issue, it's not totally a habeas issue because of Hill v. Lockhart. What authority do you have for the proposition that it's an essential element that you know that possession of child pornography is illegal? Well, we have more of that. We have excitement video, which — But the knowledge there wasn't of illegality. It was — it's knowledge of what the stuff is. Correct, except the Supreme Court has said that there are some punishment of innocent conduct in some statutes that prohibit certain acts that you have to know was wrong, for example, the food stamps or the Lacey Act. There are some that have that element in them. I'm just — I think the Supreme Court was headed that way in excitement video, and I think this Court kind of like was following along in humanitarian law projects. Certainly, if you knowingly — if all you have to do is knowingly possess child pornography without knowing it's illegal, then if my client put in the query in the Internet search engine, 15- to 20-year-olds, whatever terminology you want to use, he would put in, but refined it to 15- to 20-year-olds, but what he got back, what he downloaded was even 7-year-olds with bestiality and violence and stuff like that. How can knowledge not play into that, knowledge that that's wrong, when that's what you're going to get through even a refined search that he made? Would it be enough if he knew he was going to get 7-year-olds and bestiality? I thought it was perfectly legal, he would say. I think I would argue that if you don't have to know that it's illegal to view child pornography over the Internet, possess and receive it, if you will, then one has to at least have some knowledge of the child pornography you're getting, which in this case, when he put in the parameters of 15- to 20-year-olds, he also got younger children. Okay, but before he downloaded those images, what does the record show about whether he had knowledge of what he was downloading? He knew he wanted to get child pornography, but he framed it in a particular age group. He didn't, he had no control over what... Did he see the picture of, did he see the images of a 7-year-old or bestiality or whatever? Yes, he did. He saw the images before he downloaded them, right? No, he didn't see them until he downloaded them. They have to be downloaded. Oh, okay. So he downloaded them without viewing them first? Yes. That's my understanding of the facts, that you have to click the link for the download and then, I think it said download all, and amongst that all were things beyond the parameters of 15- to 20-year-olds. Counsel, you have a few seconds remaining on your clock. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. Eric Wolfe for the District of Montana. I'll start with the buyer's remorse. I think that it's a very fair statement of what the district court found here about the motion to withdraw a plea. It came after the first draft of the PSR, and it was not an abuse of discretion for the district court to find that. As we point out in the brief, suppression had been litigated. As Judge Gould pointed out, if there is an ineffective assistance of counsel claim and we really don't have much to suggest that there was, that would be an issue for 2255. That was not an abuse of discretion. On the mens rea arguments you just heard, they are, first of all, they're legally wrong under this court's decision in Monsini. Other circuits have addressed this as well. But they also are totally at odds with the facts. I'll just point out two facts. First of all, in the PSR at paragraph 10, this is a person who had 334 videos that had been downloaded. They included children under 12. He had 496 still images. And if you go to the sentencing transcript at pages 13, 14, and 20, you'll see that as part of his sex offender evaluation, he has to do a polygraph. And in the words of the person who evaluated him, he failed miserably. He gave the same types of statements that you just heard recited in court, and they indicated deception. He has not come clean. And that's part of the reason why the district court was very concerned about him and put him on lifetime supervised release, because this is an individual who seems to not hold himself accountable, not admit his errors, and to lie about his own intentions. Unless the court wants me to address some other issues, I'm happy to rest on the briefs. I'd like you to address the question of whether possession and receipt are duplicative or, stated somewhat differently, whether it's double jeopardy to be convicted of both possession and receipt. Absolutely, Your Honor. There are legal issues and there are factual issues, and the brief that I wrote really focuses on the elements. But there are also factual issues, and let me try and unpack each of those. When we do a double jeopardy analysis, the first question is, do the elements completely overlap? Do we have concentric circles? And here we don't, because you can be guilty of possession without any receipt. You could make it yourself. It doesn't have to travel in interstate commerce. Only the means of production have to have a tie to interstate commerce, so that's one issue. But can you be guilty of receipt without the possession? Yes, you can. Explain how that would be, that you would be guilty of receipt but not guilty of possession in a case involving this many images. There are two ways that it could work. There's a legal distinction and there's a factual distinction. First of all, legally, there's an exception in the statute for good faith disposal. So I do my search, Lolita, preteen, the terms that Davenport used. I get the images. I was searching for them. I get them. They're child pornography. I am horrified by what I've done. I take my computer and go drop it outside my window and it breaks, and I've never possessed them. I get the good faith defense. Isn't there a limit on that defense if there aren't a certain, like if there are more than three images or something? I would have to look at the statute, Your Honor. I think there is a limit for the affirmative defense, but I want to understand the government's position. Is it your position that possession requires more than fleeting possession, that is that it requires a separate conscious act to retain images, so that if you intentionally downloaded them and then did what you said and said, oh, my God, I really shouldn't be doing this, and you destroy them immediately, it's your position that the government could prosecute for receipt but not possession? If you satisfy the element of knowing receipt. So if you have an individual who goes out, searches for this stuff, they want to receive it, and they get it, then, yes, they're guilty of knowing receipt. And if I could just make one factual point. No, no, you didn't answer my question. My question is, in that scenario, if the person immediately upon receiving the 100 or however many it is, offending images, immediately destroys them, is it your position that the government cannot prosecute that person for possession as distinct from receipt because they've not made any decision to retain them in their possession? If I could make one? I want to know. Yes, but let me make one. I know you do, Your Honor. Yes, but can I just make one caveat? This question from Judge Gould about the number of images, I have to confess, you've caught me a little flat-footed on that. I'd have to go back on the statute. But that exception for prompt disposal, I mean, that's right in the statute. It is, but it's only there. That's why I'm asking you the question that I'm asking you, because the statute is limited in number. If you possess a certain number, and I believe it is three or more, then you don't have the statutory exception for it covers more than disposal. It also covers retaining it and taking it to law enforcement, which is a kind of possession even under what I'm asking. But I'm trying to get the government's official position on whether the possession statute requires something more than instantaneous receipt and then sending back out into it's gone. Yes, Your Honor, it does. You have to knowingly possess it. You have to have some interest in taking control of it to really be said to possess it. And I strongly suspect that the reason Congress says that if you have more than so many images, that's because if you're downloading lots of images, you've got an interest in having them that's more than just sort of passing fancy or something like that. But if by chance you receive it and it's just a few images, and you get rid of it or you report it to law enforcement, you're fine. You cannot be prosecuted for knowing possession. But in the broad run of cases, knowing possession is going to be just like in this case. They go into his house. It's on his hard drive. He's got it in folders. He has it labeled. Or some of these folks have whole archives where they have sort of sorted through them. And just to be clear, this is not a case like the case that defense counsel submitted in the 28J letter, Cayman. Cayman involved one receipt. This guy gets it through the mail. Here you've got 496 still images, 334 movies. Okay. There's no question. We could go to trial and say, okay, you received images 1 through 200, and that's what we're getting you with on receipt. And you received images 201 to 496, and you possessed them, and we're only doing possession on that. We could have that trial. That wouldn't present any double jeopardy problem. And that goes to a big flaw in his double jeopardy claim, which is he pled guilty. And by pleading guilty, he is pleading guilty to the facts that make him liable for both of those offenses. And he certainly could have been liable for both of those offenses, given the number of images involved. You could have separate convictions, and they don't match up with each other at all, and that goes to the factual prong of double jeopardy analysis. And if I could just put one opinion on the court's agenda that is not in the briefs, but I read it because of the case that defense counsel submitted in the 28J letter, just then Judge Breyer's opinion in U.S. v. Franchi-Forlando, 838F2nd 585. It's a First Circuit case from 1988. Would you please send that in official form to the court and opposing counsel following the argument? I will, Your Honor. Okay. Is it all right if I discuss the case just briefly? Yes, finish your thought with that. What Judge Breyer points out in that case, he has a statute. It's an importation statute, so it's not about child porn, but it's written very similarly. It has an exception where it's illegal unless you have this other thing, unless it's on the manifest. And what he points out is that's actually just like Blockburger. You might be able to call it an affirmative defense, but it's still, under the Blockburger analysis, that goes to whether the crimes are separate. And he found that the crimes were separate there. And in Blockburger, Blockburger is actually very similar in terms of legal structure. The first statutory provision in Blockburger says here's the crime. You can't distribute opium unless you have this stamp. And then it says if you do it in a package without the stamp, that's prima facie evidence of the crime. So then the defense is going to have to say, oh, I had the stamp, but I lost it, or something like that. It's an affirmative defense. And that was critical in Blockburger when they said that the offenses were separate. And if I can make one final point, and that is this is all. Yes, you have exceeded your time, so go ahead and wrap up. Last point, this is all on plain error review, and this is not a plain error. In Kuczynski, that was a Montana case. I'm very familiar with it. The panel spotted that issue. It had no briefing. They just spotted it. It's not any kind of controlling analysis. And on plain error, this is a complicated question, and they haven't met the threshold. Thank you for the extra time. Thank you, Counsel. You're welcome. And Ms. Nundy will give you a little extra as well. Wait one second while we turn the equipment back on. Excellent. Thank you. I was pleased to find you finally came to Kuczynski because, as this panel well knows, it was a panel of this Court that sent it back to you. And on remand, it was, again, there were two sentences. He remained convicted of and sentenced for both possession and receipt. Okay. And is that up on appeal again? I don't know. I'm not sure. Okay. Well, this Court, this panel has an opportunity then to rule on their own on this How do you answer the argument made by the government that there are enough images that you could take conduct from one subset of images and say that goes to receipt and take conduct on another subset of images and say that supports possession so that you're not convicting him two crimes for the same conduct, you know, even putting aside a blockbuster analysis? I think that rests on gossamer wings. I don't think you can do that. I don't think Congress intended that. I think the argument would be that he might be to be convicted on both of them, but not punished because they are the same act, which is precisely what the panel said in Kaczynski and why it was sent back. It's now up to this Court to flesh out that argument that even though the government can't split the baby that way, how can they arbitrarily determine which ones you possessed and which ones you received? What if they'd indicted him and said you're being charged with receipt with regard to images numbers 1 to 99 and you're being charged with possession with regard to images 100 through 150? Would that not be similar? Couldn't do that? Wouldn't that not be similar to indicting for possession of X amount of grams of cocaine in Ziploc baggies and X amount of grams of cocaine in fold-over top baggies? They're still trying to split the baby to save two convictions. And Kaczynski didn't say you couldn't convict twice. It said you can't punish twice, which is the onus of both possession and receipt. Thank you, counsel. We appreciate the arguments of both parties, and the case just argued is submitted. For the benefit of others who are awaiting their arguments as we go through the morning, we will take a break after this next case.
judges: Canby, Graber, Gould